IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIKA MCLAUGHLIN, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   Case No. 20-CV-64-TCK-CDL |
| v. | ) |
| | ) |
| OWASSO WINGS, LLC, | ) |
| BUFFALO WILD WINGS, INC., | ) |
| | ) |
|       Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Buffalo Wild Wings, Inc.'s Motion to Dismiss and Brief in Support. (Doc. 12). Plaintiff filed her Petition in Tulsa County District Court on January 22, 2020 (Doc. 2-1). Defendants removed the case to this court on February 14, 2020 (Doc. 2). In her Petition, Plaintiff asserts a hostile work environment claim in violation of Title VII of the Civil Rights Act of 1964. Defendant Buffalo Wild Wings, Inc. (BWW) filed its Motion on February 21, 2020. For the reasons discussed below, the Court finds that BWW's Motion to Dismiss should be granted.

    **I.**    **Background**

Because this matter is before the Court on a motion to dismiss, the Court accepts the following facts Plaintiff sets forth in her Complaint as true. Plaintiff was employed by Owasso Wings, LLC, ("Owasso Wings") a franchise location of BWW, from October 1, 2017 through March 6, 2018. In October 2017, a new manager, Scott Hamilton, began managing the Owasso Wings location. Within a week of starting at Owasso Wings, Hamilton began making inappropriate comments to Plaintiff and other female employees, such as "Damn, that ass sure looks good in spandex" and "You smell delicious, I would love to sample you." Plaintiff asked Hamilton if a

manager should be making those types of remarks to an employee and he responded with "yes, to you." A few weeks after the comments started, Hamilton began approaching plaintiff for sex. He invited Plaintiff to his home and told her that he would like to get to know her on a more personal level, but she informed him she was not interested. Plaintiff was always nervous around Hamilton because she knew he was a former police officer, and she was a felon on probation.

Hamilton's pursuit of sex with Plaintiff continued. He began promising certain employment-related rewards if she would perform sexual favors for him. Hamilton offered to "fix" her liquor license issue if she performed sexual favors, and, if she refused, he would fire her and make it difficult for her to find other employment. He assured her that if she gave him sex, "he would get her behind the bar, make sure that she had the big parties that came in, the shifts she wanted, the sections she wanted and a liquor license to back her up." Plaintiff ultimately relented. Shortly after, Hamilton provided Plaintiff with a liquor license. When Plaintiff questioned him as to how he got it, he replied with "don't worry about it, I worked it out with the ABLE commission." With the liquor license, Plaintiff began working at the bar, getting the big parties and getting the best sections on "fight night." She was making more money due to the preferential treatment she received from performing sexual favors for Hamilton.

Hamilton also appeared at Plaintiff's separate job at Grand Lake where "he would give her $200 and say 'there's much more where that came from if you keep your end of the deal.'" The more Plaintiff tried to get out of the situation without losing her job, the more threatened she felt by Hamilton. He informed her that her liquor license was fake and that if she continued to refuse to have sex with him, he would turn her in to federal authorities and have her put back in prison. He continued to exhibit unprofessional behavior toward Plaintiff on the job until she eventually asked him to leave her alone and let her do her job. Hamilton then began openly being mean to

Plaintiff, her friends at work, and Plaintiff's niece who also worked at Owasso Wings. Plaintiff finally quit after Hamilton began screaming at Plaintiff's niece in front of the workers and customers.

Plaintiff filed a Charge of Discrimination[1] with the U.S. Equal Employment Opportunity Commission (EEOC) claiming sexual harassment quid pro quo, retaliation and hostile work environment on October 8, 2018. In her charge, Plaintiff listed Buffalo Wild Wings as her employer but listed the phone number and address for the Owasso Wings location. Plaintiff received a Notice of Right to Sue on November 21, 2019. Plaintiff filed her state court petition within 90 days of receipt of the Notice of Right to Sue.

Based on these allegations, Plaintiff asserts claims against both defendants for sexual harassment, hostile work environment and discrimination in violation of Title VII of the Civil Rights Act of 1964. Defendant Buffalo Wild Wings, Inc. moves to dismiss Plaintiff's claims against it for failure to state a claim or alternatively, for failure to exhaust her administrative remedies. (Doc. 12).

## II. Discussion

### A. Dismissal Standards

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires

---

[1] In deciding BWW's Motion, the Court considered plaintiff's petition as well as the EEOC documents attached to it (Doc. 2-1). *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249 (10th Cir. 2005) ("a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

"enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). The Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *See Twombly*, 550 U.S. at 555.

The dismissal standard does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded [pleading] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

**B. Plaintiff does not Allege that BWW and Owasso Wings are a Single Entity Under Title VII**

BWW first argues that Plaintiff's Petition does not allege that BWW was her employer. For a plaintiff to prove a prima facie case under Title VII, a plaintiff must prove, among other things, that the named defendants were her employers. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). Under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). An employee, in turn, is defined as an "individual employed by an employer." *Id.* § 2000e(f). "Whether an entity is

4

an employer under Title VII usually arises as an issue . . . where a plaintiff who is directly employed by a franchisee or subsidiary wishes to hold the franchisor or parent company liable for the discriminatory conduct of its franchisee's or subsidiary's employees." *Lockard*, 162 F.3d at 1069. In such a situation, the Tenth Circuit has applied the "integrated enterprise test," also known as the "single employer test," to determine whether both entities—the franchisee and franchisor—should be considered the plaintiff's employer under Title VII. *Id.* at 1069-70; *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (stating that the "single employer test permits 'a plaintiff who is the employee of one entity . . . to hold another entity liable by arguing that the two entities effectively constitute a single employer'" (ellipses in original) (quoting *Bristol v. Bd. of Cty. Comm'rs of Cty. Clear Creek*, 312 F.3d 1213, 1218 (10th. Cir. 2002)). "Courts applying the single-employer test generally weigh four factors: '(1) interrelations of operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control.'" *Knitter*, 758 F.3d at 1227.

Plaintiff's Petition is void of any allegations that would establish that Owasso Wings and BWW are an integrated enterprise for Title VII purposes. Plaintiff does not allege that BWW participated in any of Owasso Wings' employment-related decisions (such as the hiring of Hamilton), directed any aspect of Plaintiff's work performance, paid her wages, or that the two entities shared financial control or had common officers and directors.

In her Response, Plaintiff attempts to remedy her failure to plead facts establishing an integrated enterprise by asserting that the two entities are so "intertwined financially and with work and products that they are connected to a point that they are essentially one company," (Doc. 14 at 3), and alleging additional facts about the BWW logo on Owasso Wing's signage, menus, and employee uniforms. There are two problems, however, with Plaintiff's position. First, "it is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001). Second, and more importantly, the additional allegations in Plaintiff's Response, standing alone, are not enough to sufficiently allege that BWW is Plaintiff's employer under Title VII. *See Courtland v. GCEP-Surprise*, LLC, Case No. CV-12-00349-PHX-GMS, 2013 WL 3894981 (D. Ariz. July 29, 2013) (holding use of logo on clothing, restaurant materials, and building, among other factors, was not enough to establish that Buffalo Wild Wings, as a franchisor, was as an employer under Title VII).

Accordingly, the Court grants BWW's Motion to Dismiss, but permits Plaintiff to re-allege her claim against BWW in an Amended Complaint if she can allege that BWW and Owasso Wings are an integrated enterprise.

### C. EEOC Charge of Discrimination

BWW also argues that it should be dismissed from this action due to Plaintiff's failure to exhaust her administrative remedies. (Doc. 12 at 5). Specifically, BWW argues that Plaintiff failed to list BWW in her EEOC Charge of Discrimination.

The Tenth Circuit has held that "[w]hen a court has already determined that [two] entities are so entwined as to justify holding the parent corporation liable for the subsidiary's action, it would be anomalous to not conclude that the parent had sufficient identity of interest to have been notified of the suit." *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999). Thus, Plaintiff's claim against BWW depends on whether she can allege facts sufficient to show that Owasso Wings and BWW are an integrated enterprise.

**IT IS THEREFORE ORDERED** that Defendant Buffalo Wild Wings, Inc.'s Motion to Dismiss (Doc. 12) is **granted**.

6

**IT IS FURTHER ORDERED** that Plaintiff may file an Amended Complaint re-alleging her claim against BWW as permitted by this Opinion and Order no later than December 17, 2021.

**IT IS SO ORDERED this 24th day of November, 2021.**

TERENCE C. KERN
United States District Judge